IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CATHY BRANNAN,

  *Plaintiff,*

vs.

UNIFIED SCHOOL DISTRICT 211,

  *Defendant.*

Case No. 11-1128-EFM-KGG

**MEMORANDUM AND ORDER**

  This case arises out of Plaintiff Cathy Brannan's termination from her position as custodian with Unified School District 211 in January 2010. Leading up to her termination, Plaintiff sought leave to care for her adult daughter during and after the birth of her daughter's third child. Believing her termination was unlawful, Plaintiff filed suit alleging a Family and Medical Leave Act ("FMLA") interference claim, an FMLA retaliation claim, and a wrongful discharge claim under Kansas state law. Plaintiff and Defendant have filed cross-motions for summary judgment on Plaintiff's claims. Because Plaintiff was not entitled to FMLA leave and because there was no implied employment contract between Plaintiff and Defendant, the Court grants Defendant's motion and denies Plaintiff's motion.

## I.     Factual and Procedural Background

### A.     Plaintiff's Requests for Leave

Plaintiff began work as a full-time custodian for Defendant on March 18, 2002. In June 2003, Plaintiff requested leave to care for her adult daughter and grandson, who resided in Alaska, after he began experiencing convulsions shortly after his birth. Plaintiff did not request a specific amount of time off or make an FMLA leave request but received approximately three weeks leave. In March 2006, she again requested leave when her daughter gave birth to her second child and was granted such leave in May 2006 in the form of vacation time, compensatory and personal time, and unpaid leave.

In July 2009, Plaintiff learned that her daughter was pregnant and would be giving birth to her third child in Alaska in January 2010. In October 2009, Plaintiff submitted a written request for unpaid leave from January 5, 2010, through February 5, 2010. The request stated that Plaintiff's daughter was having a baby. It did not mention or request FMLA leave. At the time Plaintiff submitted her request, her daughter's pregnancy was proceeding normally with no complications.

Plaintiff's school principal forwarded her request to Defendant's Superintendent of Schools, Greg Mann. On October 27, 2009, Mann sent a memo to Plaintiff stating that he was concerned with the length of Plaintiff's requested leave and that he was submitting Plaintiff's request to the Board of Education ("the Board"). After discussing the matter with the Board, Mann told Plaintiff that she was authorized to use her remaining 8.5 days of paid leave and that the Board was giving her five additional days of unpaid leave, which totaled 13.5 working days of leave. Upset with the Board's decision, Plaintiff submitted her two weeks' notice of resignation to Mann, which she later withdrew. When Mann later questioned Plaintiff about her

plans, she told him "I'm just going to work."[1] But, before Plaintiff left for Alaska on January 7, 2010, she cleaned out her desk and removed all of her belongings because she knew she was going to stay longer than she had been approved and was not sure that she would be working at the school after she returned.

Plaintiff's first contact with Defendant after arriving in Alaska was on January 12, 2010, when she called her school principal and told him that she needed to be in Alaska longer than she anticipated because her daughter was having complications with her delivery. On January 14, 2010, Mann sent Plaintiff a memo stating that she was required to return to work at noon on January 27, 2010, and that she could obtain additional leave under the FMLA if she made a written request for such leave and provided medical certification. Plaintiff did not read the memo when she received it. On January 15, 2010, Plaintiff sent a handwritten request for further extension of leave to care her daughter. The request was accompanied by a note from Loeken's doctor, which stated that "Cathy is in Alaska helping her daughter Cecelia (sic) Loeken with care of newborn child born January 13, 2010."[2] Mann sent Plaintiff a memo on January 21, 2010, informing her that the doctor's note did not indicate that Plaintiff's requested leave was within the FMLA, and that she needed to report to work by noon on January 27, 2010. Plaintiff received the letter on January 23, 2010, but did not read it. After speaking with her husband, she decided not to return to work and to stay in Alaska until February. Defendant terminated Plaintiff on January 27, 2010, after she failed to report to work. Plaintiff received notice of

---

[1] Brannan Deposition, Doc. 60-2, p. 12.

[2] Doctor's Note, Doc. 60-2, p. 86.

termination through a memo from Mann that stated that her employment was terminated "due to gross neglect of duty; that is your unauthorized absence from work."[3]

### B.     The Birth of Plaintiff's Grandchild

Plaintiff's daughter, Melissa Loeken, gave birth to her third child on January 13, 2010, in Alaska.  Before the birth, Loeken was stressed because it was questionable whether her husband, a member of the U.S. Coast Guard, would be present for the birth and whether her mother would be able to come to Alaska to care for her.  Loeken did not receive, however, any medications or counseling for her stress.  On January 12, 2010, Loeken was admitted to the hospital, where her physician medically induced labor for social reasons.  She was discharged the next afternoon for failing to deliver but returned to the hospital three hours later and gave birth to her daughter.  The delivery was normal and straightforward, except for the induction, and no anesthesia was used.  She did not experience any complications during her recovery after birth.

Loeken remained in the hospital until January 15, 2010.  Loeken's discharge instructions from her physician did not contain any significant restrictions and indicated that activities should be "as tolerated, may take tub bath, may shower, no restriction."[4]  The hospital's discharge planning notes indicated "no D/C needs identified at this time."[5]

Upon returning home, Loeken was able to bathe, dress, and feed herself.  She was able to help cook and clean if she had to, and she was able to drive to the grocery store.  The only activities that Loeken felt she would have difficulty with was taking care of her two other children and walking them to the bus stop.  After the first week and half after the birth, Loeken

---

[3]   Defendant's Memo, Doc. 60-7, p. 60.

[4]   Hospital Discharge Instructions, Doc. 60-12, p. 12.

[5]   Hospital Discharge Planner, Doc. 60-12, p. 8.

began taking turns watching the baby, cooking, and cleaning. According to Plaintiff, her daughter was able to take care of herself during the time she was in Alaska. She does not believe that her daughter was incapable of taking care of the home but that she was just helping her daughter out.

### C. Plaintiff's Employment with Defendant

Plaintiff began working for Defendant on March 18, 2002. When Plaintiff accepted employment, she understood that she could quit at any time with two weeks' notice to Defendant. After she started working, she received Defendant's Classified Employee Handbook (the "Handbook"). The Handbook contains several provisions stating that classified employees are employed "at will" and includes such statement in plaintiff's job description.[6] It also contains Defendant's policies regarding termination of employees and obtaining leave under the FMLA. Plaintiff remembers glancing through the Handbook after she received it, but she does not remember reading any particular part of it.

In addition to receiving the Handbook, Plaintiff received and signed Salary Information Sheets regarding her employment from 2002 to 2009. Each of these sheets stated that her employment was at will. The Salary Information Sheets from 2002 through 2005 also stated that employment may be terminated with two weeks' notice, or at the desecration of the Superintendent, with two weeks' pay. The Salary Information Sheets from 2006 through 2009 also stated that employment may be terminated by either party after giving two weeks' written notice with or without cause and that no written statements, handbooks, policies, or elsewhere intended to create a right of continuing employment.

---

[6]   Handbook, Doc. 60-6, pp. 9, 32, 34-39, 41, and 47.

Plaintiff received pay raises from Defendant each year that she was employed. In addition, Plaintiff had no previous disciplinary problems, and the principal at her school characterized her as a good worker.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[7] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[8] A fact is "material" when "it is essential to the proper disposition of the claim."[9] The Court views the evidence and all reasonable inferences in the light most favorable to the party opposing the motion for summary judgment under consideration.[10]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[11] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[12] If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[13] The opposing party must "set forth specific facts that

---

[7] Fed. R. Civ. P. 56(a).

[8] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[9] *Id.*

[10] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[11] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[12] *Id.* (citing *Celotex*, 477 U.S. at 325).

[13] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[14] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[15] Conclusory allegations alone are insufficient to defeat a properly supported motion for summary judgment.[16] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[17]

Though the parties in this case have filed cross-motions for summary judgment, the legal standard remains the same.[18] Each party retains the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law.[19] Each motion will be considered separately.[20] "To the extent the cross-motions overlap, however, the court may address the legal arguments together."[21] Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[22]

---

[14] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[15] *Adler*, 144 F.3d at 671.

[16] *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[17] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[18] *City of Shawnee v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1172 (D. Kan. 2008).

[19] *United Wats, Inc. v. Cincinnati Ins. Co.*, 971 F. Supp. 1375, 1381-82 (D. Kan. 1997) (citing *Houghton v. Foremost Fin. Servs. Corp.*, 724 F.2d 112, 114 (10th Cir.1983)).

[20] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[21] *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010).

[22] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III. Analysis

#### A. FMLA Interference

Plaintiff claims that Defendant interfered with her right to take FMLA leave by refusing her request for leave to take care of her adult daughter during the birth of her daughter's third child. "Under the FMLA, an employer may not 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA].' "[23] Refusing to authorize FMLA leave to an employee entitled to take leave constitutes interference.[24] To establish a prima facie case of interference, Plaintiff must prove that: (1) she was entitled to FMLA leave; (2) her employer's adverse action interfered with Plaintiff's right to take FMLA leave; and (3) her employer's adverse action was related to the exercise or attempted exercise of the plaintiff's FMLA rights.[25]

The FMLA authorizes leave to care for a child eighteen years of age or older *only if* the child is suffering from a serious health condition *and* is "incapable of self-care because of a mental or physical disability."[26] According to FMLA regulations, "physical or mental disability," as used in 29 U.S.C. § 2611(12)(B), means a "physical or mental impairment that substantially limits one or more of the major life activities of an individual," as these terms are defined by the American with Disabilities Act regulations.[27] In other words, an adult child must

---

[23] *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006) (quoting 29 U.S.C. § 2615(a)(1)).

[24] 29 C.F.R. § 825.220(b)

[25] *Id*.

[26] 29 U.S.C. § 2611(12).

[27] 29 C.F.R. § 825.122(c)(2).

be disabled under the ADA for an employee to take FMLA leave to care for him or her.[28] Further, an individual is incapable of self-care if the individual "requires active assistance or supervision to provide daily self-care in three or more of the 'activities of daily living' or 'instrumental activities of daily living.' "[29] "Activities of daily living" include "adaptive activities such as caring appropriately for one's grooming and hygiene, bathing, dressing, and eating."[30] "Instrumental activities of daily living" include "cooking, cleaning, paying bills, maintaining a residence, using telephones and directories, using a post office, etc."[31]

According to Defendant, the relevant time period in which to determine whether Plaintiff was entitled to FMLA leave was on or after January 27, 2010, because that was the first day Defendant required her to return to work after exhausting the paid and unpaid leave it granted to her. The Court, however, disagrees. Although the Tenth Circuit has not explicitly addressed the issue, it has recognized the Eleventh Circuit's decision in *Strickland v. Water Works & Sewer Board of the City of Birmingham*[32] regarding the relationship between FMLA leave and paid sick leave.[33] In that case, the Eleventh Circuit held that "an employer cannot escape liability under the Act for the period during which the employee, whose leave qualifies under the FMLA, is receiving his wages in the form of sick (or other) pay."[34] The Eleventh Circuit explained:

---

[28] *Franklin v. MIQ Logistics, LLC*, 2011 WL 3205774, at *3 (D. Kan. July 28, 2011).

[29] 29 C.F.R. § 825.122(c)(1).

[30] *Id*.

[31] *Id*.

[32] 239 F.3d 1199 (11th Cir. 2001).

[33] S*ee Ney v. City of Hoisington*, 2645 Fed. Appx. 678, 680 n. 1 (10th Cir. 2008) (" 'FMLA leave is not dependent upon the absence of earned leave.' ") (quoting *Strickland*, 239 F.3d at 1105).

[34] *Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1205 (11th Cir. 2001) (interpreting 29 C.F.R. 825.207(e) and 29 C.F.R. 825.207(f)).

> [A]n employer who is subject to the FMLA and also offers a paid sick leave policy has two options when an employee's leave qualifies both under the FMLA and under the employer's paid leave policy: the employer may either permit the employee to use his FMLA leave and paid sick leave sequentially, or the employer may require that the employee use his FMLA leave entitlement and his paid sick leave concurrently. . . . Neither Congress nor the Department of Labor could have intended, by using the substitution language, to allow employers to evade the FMLA by providing their employees with paid sick leave benefits. Otherwise, when an employee misses work for an illness that qualifies under both his employer's paid sick leave policy and the FMLA, his employer could elect to have the absence count as paid sick leave rather than FMLA leave and would then be free to discharge him without running afoul of the Act.[35]

Therefore, Defendant cannot use its accrued sick leave policy to render Plaintiff ineligible for benefits. If Plaintiff qualified for leave before or after January 27, 2010, then the leave she took was protected by the FMLA.

Regardless of what time period the Court looks to determine interference, Plaintiff's claim fails. Plaintiff has not alleged any facts showing that her daughter was incapable of self-care at any time she requested leave. From the time Plaintiff made the request for leave in October 2009 to the time she arrived in Alaska, her daughter's pregnancy was proceeding normally. When Plaintiff sent an additional request on January 15, 2010, her daughter had just experienced a normal birth with no complications and was being discharged from the hospital with no restrictions. Upon arriving home, Plaintiff's daughter was able to dress herself and bathe herself. She also helped cook and clean and drive to the grocery store. The only activities that her daughter felt she would have difficulty with upon arriving home were taking care of her two other children and walking them to the bus stop. The FMLA, however, does not entitle an employee leave to care for grandchildren.[36] Furthermore, within a week and a half of the birth,

---

[35] *Id.* at 1205-06.

[36] *Novak v. Metrohealth Medical Center*, 503 F.3d 572, 581 (6th Cir. 2007).

her daughter began watching her children and doing some cooking and cleaning. Even Plaintiff testified that her daughter was capable of caring for herself and her children while she was in Alaska. While the Court understands and acknowledges that Plaintiff's daughter welcomed any help that she received after the birth of her child, the undisputed facts show that Plaintiff's daughter was never incapable of self-care. Therefore, Plaintiff has not met her burden to show that she was entitled to FMLA leave.

Plaintiff argues that Defendant failed to comply with FMLA's requirement of notice of rights. What Plaintiff fails to realize, however, is that Defendant's compliance with the notice provision is irrelevant because Plaintiff was not entitled to FMLA leave. The first element of an interference claim is that the plaintiff is entitled to FMLA leave during the relevant time period.[37] The undisputed facts show that Plaintiff was not entitled to FMLA leave. Therefore, even if Defendant failed to comply with the FMLA's notice rights, this is irrelevant to Plaintiff's claim.[38] Summary judgment for Defendant is therefore appropriate.

### B. FMLA Retaliation

The FMLA not only protects plaintiffs from interference with their leave, but also from retaliation for exercising their rights.[39] Plaintiff claims that Defendant retaliated against her when she was terminated from employment on January 27, 2010. To establish a retaliation claim under the FMLA, Plaintiff must show that: (1) she engaged in a protected activity; (2) her employer took an action a reasonable employee would find materially adverse; and (3) a causal

---

[37] *Franklin*, 2011 WL 3205774, at *3.

[38] *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004) (finding that the district court's grant of summary judgment stood on the defendant's substantive FMLA claim even though the plaintiff appealed the district court's finding regarding proper notice).

[39] 29 U.S.C. § 2615(a).

connection between the two exists.[40]  In light of the Court's ruling that Plaintiff was not entitled to leave under the FMLA, Plaintiff cannot prove that she engaged in a statutorily protected activity.  Accordingly, Plaintiff's cause of action for retaliation fails.  Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

### C.     Wrongful Discharge

Plaintiff has asserted a wrongful discharge claim under Kansas state law.  This claim turns on the existence of an implied contract for employment between Plaintiff and Defendant.[41] " 'Kansas employment law is grounded in the doctrine of employment-at-will.  In the absence of an express or implied contract of duration or where recognized public policy concerns are raised, employment is terminable at the will of either party.' "[42]  However, "the Kansas courts have recognized that an employer can create an "implied-in fact" contract based upon representations made in an employment manual or other sources."[43]  " 'The relevant inquiry in determining whether an implied contract exists is whether the parties intended to enter into an agreement restricting employer's ability to terminate its employees at will.' "[44]  Factors considered by the courts in determining the parties understanding and intent include "written and oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usage of

---

[40]     *Metzler*, 464 F.3d at 1170.

[41]     *Ruiz v. City of Grandview Plaza, Kan.*, 2012 WL 75092, at *3 (D. Kan. Jan. 10, 2012).

[42]     *Hysten v. Burlington N. Santa Fe Ry. Co.*, 277 Kan. 551, 554 (2004) (quoting *Riddle v. Wal-Mart Stores, Inc.*, 27 Kan. App. 2d 79, Syl. ¶ 2 (2000)).

[43]     *Taylor v. Home Depot USA, Inc.*, 506 F. Supp. 2d 504, 517 (D. Kan. 2007) (citing *Morriss v. Coleman Co.*, 241 Kan. 501, 738 P.2d 841, 848-49 (1987); *Kastner v. Blue Cross and Blue Shield of Ks., Inc.*, 21 Kan. App. 2d 16, 24 894 P.2d 909, 916 (1995)).

[44]     *Id.* (quoting *Emerson v. Boeing Co.*, 1995 WL 265932, *1 (10th Cir. 1995)).

the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship."[45]

The intent of two contracting parties is normally a question for the jury.[46] But this does not preclude the granting of summary judgment in an appropriate case.[47] This Court has noted that for a plaintiff to survive a summary judgment motion, it must assert specific facts establishing a triable issue concerning whether the parties possessed the mutual intent to create a legitimate expectation of continued employment.[48] The cases have consistently held that "summary judgment is appropriate if the plaintiff presents only evidence of her own unilateral expectations of continued employment."[49]

Plaintiff asserts that Defendant's U.S.D. 211 Classified Employee Handbook for 2009-10 and its course of dealing with Plaintiff created an implied contract that Plaintiff would not be fired if she did not engage in gross neglect of duty or gross misconduct and that FMLA leave would be granted. Plaintiff relies on two provisions within the Handbook in support of its argument, the first of which discusses termination of employees. It states:

> Two weeks [sic] notice will be provided by the district, if an employee is to be terminated. Two weeks [sic] pay, instead of notice, may be given at the discretion of the superintendent. An employee may be terminated immediately, without notice of further pay, for gross neglect of duty or gross misconduct at the discretion of the superintendent. Examples include: insubordination, incompetence, carelessness, unauthorized absence from work, fraternization with

---

[45] *Id*. (citing *Morriss*, 738 P.2d at 848-49).

[46] *Morriss*, 738 P.2d at 848; *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 537 (10th Cir. 1995)).

[47] *See Emerson*, 1995 WL 265932, at *1 (collecting federal cases applying Kansas law where summary judgment in this context was affirmed)).

[48] *Taylor*, 506 F. Supp. 2d at 517 (citing *Zwygart v. Bd. of County Commr's of Jefferson County*, 412 F. Supp. 2d 1193 (D. Kan. 2006)).

[49] *Id.* 517-18 (citing *Kastner*, 894 P.2d at 916)).

students, immoral conduct, misuse or misappropriation of district property and/or funds, reporting to work while under the influence of drugs/alcohol, and the use of illegal drugs.[50]

The second provision from the Handbook that Plaintiff relies upon discusses FMLA leave. It states:

> Family and medical leave as required by federal law shall be granted for a period of not more than 12 weeks during a 12-month period . . . . Leave is available because of . . . (3) the need to care for a spouse, son, daughter or parent of the employee because of a serious health condition.[51]

Plaintiff also asserts that she and Defendant had developed a course of conduct in which she performed her job duties, took extended unpaid leave, was kept as an employee, and was given successive pay raises. She also claims that she was told by her immediate supervisor that she could not be denied FMLA leave. According to Plaintiff both the Handbook provisions and Defendant's course of dealing and statement to her about FMLA leave establish an implied contract between her and Defendant. The Court disagrees.

Plaintiff's evidence is insufficient to create a factual issue as to whether an implied contract existed because it does not show that Defendant made an implied promise not to terminate her. Here, Plaintiff relies on Defendant's past treatment of her, the statements in Defendant's handbook, and one comment from her supervisor that she could not be denied FMLA leave to show that she had an implied employment contract. None of this evidence is inconsistent with Defendant having the ability to terminate Plaintiff at will. While one supervisor may have told her that she could not be denied FMLA leave, this statement presumes that she was entitled to such leave in the first place—which she was not. Furthermore, this

---

[50] Handbook, Doc. 60-6, p. 9.

[51] Handbook, Doc. 60-6, p. 21.

statement by her supervisor is contradicted by the language of the Handbook, which states that "Family and medical leave *as required by federal law* shall be granted . . . ."[52] According to this statement, the school was only required to give leave that was required by federal law, and as this Court previously found, Plaintiff's request for leave was not required by the FMLA. In addition, Defendant's Handbook, Plaintiff's job description, and her salary information sheets all stated that Plaintiff's employment was at will. While these disclaimers are not determinative of the issue, the Court considers them probative evidence that Defendant did not intend to enter into an implied contract with Plaintiff.[53]

"[T]o survive summary judgment on an implied contract claim, a plaintiff must show more than her own unilateral expectation of continued employment."[54] A plaintiff "must show the parties had a mutual intent to create a legitimate expectation of continued employment."[55] In this case, Plaintiff has only shown a unilateral expectation on her part of continued employment. There is no evidence Defendant entered into an agreement restricting its ability to terminate employees at will. The Court therefore grants Defendant's motion for summary judgment on Plaintiff's wrongful discharge claim.

---

[52] *Id.*

[53] *See Taylor*, 506 F. Supp. 2d at 518 (" 'It is well established that disclaimers of this nature are probative of whether an implied employment contract was formed; however, the disclaimer does not, as a matter of law, always determine the issue. For the disclaimer to be determinative, the evidence must show that the plaintiff actually read the disclaimer or that it was otherwise brought to the plaintiff's attention and the disclaimer must not be inconsistent with statements made by the defendant to its employees.' ") (citations omitted).

[54] *Taylor*, 506 F. Supp. 2d at 519 (citing *Conyers*, 825 F. Supp. at 977).

[55] *Id.*

**D.     Collateral Estoppel**

After her termination, Plaintiff filed for unemployment benefits through the Kansas Department of Labor. Defendant contested her application. The Unemployment Deputy Examiner, however, found that Plaintiff's absences were with good cause. Defendant appealed the decision, and the unemployment insurance judge affirmed the examiner's decision. Plaintiff now argues that Defendant is collaterally estopped from taking a position contrary to the unemployment insurance judge's ruling. The Court disagrees.

This Court has found that the "[f]ederal courts consistently have treated Kansas unemployment insurance proceedings as so unique and different from other judicial proceedings that collateral estoppel effect was not accorded them."[56] Plaintiff has not cited any authority contradicting this finding. Therefore, the Court declines to accord collateral estoppel to the unemployment insurance judge's decision.

**IT IS ACCORDINGLY ORDERED** this 8th day of January, 2013, that Defendant's Motion for Summary Judgment (Doc. 59) is hereby **GRANTED** and Plaintiff's Motion for Summary Judgment (Doc. 61) is hereby **DENIED**.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[56] *Wessel v. Enersys, Inc.*, 2005 WL 1863098, at *2 (D. Kan. July 6, 2005) (citing *Zimmerman v. Sloss Equipment, Inc.*, 72 F.3d 822, 826-27 (10th Cir. 1995); *Palmer v. Leawood South Country Club*, 1998 WL 724050, at *7 (D. Kan. Sept. 9, 1998); *Gutierrez v. Board of County Comm'rs*, 791 F. Supp. 1529, 1532-34 (D. Kan. 1992)).